Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now in session, the Honorable Liam C. Brennan presiding. Your Honors, the first case on the dot this morning is 2-21-0692, Trinidad Mora, Plaintiff Appellant v. J&M Plating, Inc. Defendant Appellee. Arguing for the Appellant, Mr. Max S. Roberts. Arguing for the Appellee, Mr. Joshua G. Vincent. Mr. Roberts, you may begin. Good morning, Your Honors. Max Roberts of Mercer & Fisher for Plaintiff Appellant, Trinidad Mora. Just quickly, I wanted to thank Your Honors for being accommodating to my request for a rescheduling of the hearing. I greatly appreciate it. Your Honors, for four years after it first possessed Mr. Mora's biometric information, J&M failed to establish a retention deletion schedule for the possession of biometric data as is required by Section 15A of the BIPA. That is four years longer than the plain text of Section 15A, case law interpreting Section 15A, and the legislative policy behind BIPA's enactment allows. Mr. Roberts, let me just ask, how much longer is too long? One day? Ten days? One year? Four years? How do we decide? Your Honors, going by the plain text of Section 15A, too long is any time after an entity first possessed biometric data. But what about a case where the entity already possesses the biometric data at the effective date of the statute? Are they automatically in violation of 15A and subject to a suit five minutes after the effective date? Your Honors, that's not the question before this court. But it is a relevant question, though, as it relates to us determining when a cause of action accrues. So, Your Honors, two things on that. The first thing would be that there are due process concerns that would protect an entity who, prior to BIPA's enactment, possessed biometric data, and then BIPA was enacted later. So you could look at the AAPC case, for instance, in the Supreme Court of the United States, where telemarketers who were government debt collectors were making calls underneath an exemption that was later ruled unconstitutional. So while that exemption was in place, they were fine. And that that exemption was later declared unconstitutional doesn't mean that the debt collectors can be held liable for conduct that occurred prior to the statute. The second answer to Your Honors' inquiry is to look at the… How long do defendants have to develop this policy after the effective date before there's a cause of action? Five minutes? Five days? Five weeks? Five years? What's the answer? So, according to the Figueroa Court, Your Honor, in the Northern District of Illinois, it would be at the moment of possession. And that is in accord with the plain text of the statute. So if you look at the People v. Ward case that the Illinois Supreme Court held, possession is the moment when a person has or takes control. So J&M and an entity has or takes control on the first day of their possession of biometric data. So, yes, if on the first day that this statute's enacted and they don't have a retention deletion schedule, then they're in violation of Section 15A. So a smart plaintiff's attorney would file a class action lawsuit on the effective date of the statute against every single company possessing biometric data under 15A, and they would be within their rights to do that? By the plain text of the statute, yes, Your Honor. And that might not be the, you know, maybe that's not a good policy. Maybe it is. But that's what the statute holds. The statute holds that when an entity takes possession of biometric data, it has to have this schedule in place. And if it doesn't have the schedule in place, it's in violation. And I would also counter, Your Honor, by citing a comment from the Illinois Supreme Court in Rosenbach, which says that compliance with this statute is easy. It is not hard for an entity to create a retention and deletion schedule. It is not hard for a sophisticated defendant to say, hey, this law is going to be passed. Let's enact this. Let's put this policy in place so that when BIPA is enacted in 2008, this schedule is in place. But here's the thing. That's not the facts before us. The facts before us are that the BIPA was enacted in 2008, and J&M possessed this data in 2014. So it had six years to develop this policy, and it simply didn't do so. And that's in complete violation of the plain text of the statute. It's also in violation of — sorry, were you about to ask a question, Your Honor? I did. I apologize. I don't want to hog the question time. Go ahead, Justice Shastri. It's all right. What do you make of or within the three years? Within three years? Sure, Your Honor. So there are two different prongs under Section 15A. There is the requirement that an entity must create a retention and deletion schedule, and there is a requirement that an entity must comply with a retention and deletion schedule. So the language that Your Honor is citing, which is within three years, pertains to the requirement that it must comply. So they have to delete the data that's in their possession after the individual's last interaction or within the initial purposes up or within three years of that interaction, whichever occurs earlier. It doesn't apply to when the entity has to create the schedule prong. The governing language there is a private entity in possession of biometric data must develop a written policy establishing a retention and deletion schedule. And as I said earlier, possession means when an entity has or takes control. And that — sorry, go on. Go ahead and finish your thought. No, no, no. Your Honor, please. All right, here's my question. You keep saying it must be completed, must be completed, but my understanding of the statute is it requires the holder of this data to develop a program, not necessarily to have it completed nor in place. I'm not sure I understand Your Honor's question. Would you mind rephrasing, please? Yes, the statute, the language is to develop a schedule, not to complete it. And you keep saying complete. Sure, Your Honor. So the development is when the entity is in possession. So that would mean that they have to have created. The completion prong is to the compliance with that schedule, which occurs after the data is no longer needed. That's when they have to actually delete the data. But those are two separate violations or causes of action under 15A. So, for instance, you could have an instance like J&M where we're not alleging that J&M didn't comply with the schedule that they eventually created. They say in a declaration that they inevitably deleted the information. But we are alleging that they didn't create it when they were supposed to, because they had to create it at the moment of, not prior to possession, and they didn't. They waited four years to do so, and that's four years too long under the text. But I think that's the heart of my question. What does the word develop mean in the statute? Does that mean it must be completed or they must undertake to begin the process? Well, Your Honor, construing it as other cases have held, it means that they must complete it. Because if you look at every case that both parties cite, it says that an entity cannot wait three years to develop a retention deletion schedule. That's Neusman. The Bernal case that both parties cite is that if a private entity is in possession but lacks an established schedule, it stands to reason that the entity is in violation of 15A. The Namwanji case sustained a 15A cause of action when the employee was currently employed by the private entity. So all those cases in Watson you have saying that the obligation exists in the last day, if not before. So every one of those cases, although not binding on this court, have held that the schedule, I guess the word developed, would mean that it actually had to have been created at the time of possession. And even if it's Your Honor's other interpretation that I guess they're in the process of creating, that also J&M would still be violating it because there are no allegations and no proof, I would say, based on a declaration that they were in development of this policy at any time before 2018. Are there any cases that have suggested that this is a public right and not a personal or private right as it relates to the employee? Yes, Your Honor, but even so, J&M would still be in violation because they just simply did not have the policy in place. Well, sorry, did Your Honor have a follow up to that? I did not. Yeah, so even if it's a, whether it pertains directly to the employee or if it pertains to the class of employees as a whole, this policy still did not exist. Either way, this requirement has been violated. And if Your Honor is saying whether or not plaintiff has a cause of action in the first place, that would be, I refer Your Honor to the Rosenbach decision by the Illinois Supreme Court, which is that any violation of any of Section 15's requirements confers a cause of action because a party is aggrieved by that violation. And speaking of aggrieved, your opponent indicates that, you know, wait a minute, there are no damages, nobody was aggrieved here. How do you respond to that? You're going to respond with the Great America case. Sure, Your Honor. So I would make two arguments. The first is that Rosenbach held that any violation of any of Section 15's requirements confers a real and significant injury. So it doesn't matter if it's 15A, 15B, 15E, a violation of any of them is an injury sufficient for BIPA full stop. And the policy objective that serves is that the retention deletion schedule is essentially a privacy policy for biometric information. As the Figueroa court held, it's supposed to inform Mora of who's collecting his biometric information, where it's going to, how it's being stored, how long it's going to be stored, and that allows him to make informed decisions. And because he wasn't presented that at the first moment of possession, he was deprived of that right. And so he was injured under Rosenbach. But the informed consent aspect of BIPA is contained in other subsections, not in 15A. Respectfully, I would disagree, Your Honor. So as courts have held, 15A sets forth how an entity handles biometric information. Now, when they're supposed to get consent, the level that they're supposed to safeguard it at, those requirements are set forth in the other section. Let me ask my question a little differently. So 15A requires the publication of this to the general public. It is not required that this be presented to the employee at the time the biometric information is collected, correct? Yes, Your Honor, but even so... So not part of the consent as it relates to these other provisions, and that's my point. Yes, Your Honor. However, even so, J&M didn't publish this retention schedule to the public when it first possessed biometric information. It stated in the Schumacher Declaration that it first began possessing biometric information in September of 2014. It did not have a retention schedule at that time. So whether it had to be provided to Mr. Mora or it had to be published to the public at large, it simply didn't exist. And that's a violation under the plain text of Section 15A. And I would also just... I want to refer, Your Honors, just to the policy behind BIPA. And I know we talked about the text in the case law, but the entire point of BIPA is to head off problems before they occur, to protect biometric information to begin with before it is or can be compromised. So the idea here that the lower court seemed to sanction that an entity can wait 20 years, 50 years to establish a retention deletion schedule, that it can do it after a data breach, that it can do it whenever it wants so long as eventually it complies, which is the lower court's direct language from the motion for summary judgment hearing. That just flies in the face of what BIPA is supposed to stand for. If an entity doesn't have to comply with the statute until it feels like it, then the statute has no teeth. It has no enforcement mechanism. It has no purpose. And this court, per the Southern Illinoisian case, must construe statutes to avoid that absurdity, to avoid a situation where a section of a statute just has absolutely no meaning whatsoever. It's like saying that if I'm driving over the speed limit, I'm going 90 to 40, and suddenly I slow down to 40 miles an hour, that a cop couldn't pull me over for speeding when I was doing 90, that I couldn't be ticketed for doing 90. Just because I stopped breaking the law doesn't mean I wasn't breaking the law to begin with. It doesn't mean that I can't be charged for breaking the law in the first instance. So there's simply nothing in the text that supports J&M's interpretation. There's nothing in the case law that supports J&M's interpretation. And the policy behind BIPA doesn't support J&M's interpretation. All of it construes in favor of plaintiff's interpretation that this schedule had to be created at the moment of possession, if not prior to. And just to address some of J&M's other points. So one of J&M's arguments is that this would be so difficult to comply with. It would turn BIPA into a strict liability statute. And that's simply not the case for two reasons. The first is that as the Rosenbach Court held, compliance with the statute is very easy. The idea that an entity has to publish the schedule is not difficult. And we know it's not difficult because while it took J&M longer than it was required, they did eventually do it. And it wasn't that hard. And even if it is difficult, the Rosenbach Court held that the Illinois legislature enacting BIPA found that any compliance is outweighed by the real and significant harm that would befall plaintiffs if the BIPA is not complied with. And two, it doesn't turn BIPA into a strict liability statute because it doesn't automatically award damages of certain amounts, right? Just because you violate BIPA doesn't mean you get the maximum damages. There's a negligence violation and there is a reckless violation. So it depends on the mindset. And one could say, well, in your honors prior questioning, if you developed it a day later, maybe that's a negligence violation. Maybe it's not negligent at all. A $1,000 fine, in other words. Yes. It would be, yes. Maybe that's a negligent violation. Maybe it's not a negligent violation. If you develop it four years later, though, that's on the entity. That's on the entity for not recognizing that this was the law and choosing to not comply with it. So J&M is in this pickle by its own fault and its own failure to recognize what the law is. So unless your honors have any further questions, I'll reserve my remaining time for rebuttal. But just to quickly conclude, the text does not. Well, can I briefly conclude, your honor? Yes, you may. Okay. The text does not support that a retention deletion schedule must be established at the moment of possession. The case law does, and the policy behind it does. Therefore, the lower court's judgment should be reversed. Thank you, Mr. Roberts. You will have an opportunity for rebuttal. Mr. Vincent. Thank you, Justice Bryant. You know, Mr. Roberts and his firm, of course, they have oodles of these cases pending. As I'm sure the court is aware, there are hundreds, if not thousands, of these cases pending. There's obviously a very strong interest on his part to have you make a very sweeping declaration that the moment someone possesses the data, they're in violation of the statute if they don't have a policy. Because the damages and the effect, I mean, the effect on Illinois business. Mr. Vincent, let me stop you right there. I know where you're going, and I don't mean to cut you off. But isn't that exactly what, and I call it the Great America case. Isn't that what the Great America case said? I mean, this court, the appellate court in that case, kind of agreed with your thinking. You know, you're going to tell a business who's coming into Illinois, this is going to kill businesses. You're going to tell them that if you violate this by not having something in place, you're automatically in violation. Isn't that exactly what the Great America case said? And how do we reverse that? I don't think you have to reverse it. What I think this case presents is an opportunity. I mean, don't follow it. How do we not follow it? I think you should follow it, because I think that that case lights the path for a very narrow ruling in this case based solely on the question of whether the plaintiff was aggrieved. I mean, that was the whole issue in the Rosenbach case. That was the issue in Rosenbach, but as Mr. Roberts said, aggrieved how? I mean, in Rosenbach, the second district appellate found that they weren't aggrieved. No, that was, excuse me, Your Honor, the issue in Rosenbach was this court had held that you had to show actual injury. Correct. In Rosenbach, the Supreme Court said, no, you don't have to show actual injury. You have to show aggrieved, and they defined aggrieved by saying you have to show that the plaintiff's legal interest or right has been invaded. That's when the aggrievement occurs. I mean, this is... Right, right. I agree with you. So you have either a fine, a penalty, or you have a different type of punishment, if you will, or damages, if you will. Either way, you can find that he was aggrieved. No, you cannot. That's the problem here, and that was the basis of Judge Hounsell's ruling, is that there was no harm. And here's why. Let me explain why. The interest that's created by Section 15A is having a policy in place at the moment the data is no longer, the purpose of collecting it has been satisfied, or the party's relationship has ended. So that legal interest or right can't be invaded. There can't be an injury until you arrive at that moment in time where the interest, where the purpose for collecting the data has been satisfied, or the party's relationship has ended. It's at that moment that if there is no policy in place, the plaintiff's legal right or interest in having a policy has been breached, and that's when the injury would occur. Doesn't that defeat the whole purpose of the BIPA statute? No. So that you can just wait until it's time to dispose of the information before you put in place a policy? No, that's what 15B is for. 15B, which is a claim that they don't have in this case, provides that when you collect the data, you have to tell the plaintiff, here's the length of term that we're going to store it, keep it, and use it. Now, if you don't have a policy in place at the time you collect it, obviously you're going to be in violation of 15B because you haven't been able to inform the plaintiff of the length of term that you're going to store it. So at that moment, the legal interest or right in the plaintiff having informed consent, knowing what the term will be, how long you're going to keep it, that's been breached. And so that's when you have injury under 15B, but he doesn't have a 15B claim here. And so what the plaintiff is trying to do in this case is bootstrap his lost 15B claim, bootstrap his 15A claim that he has left right now, onto the 15B claim that he failed to appeal. Because that's how you remedy the problem that you're talking about, Justice Shostak. If the policy isn't in place from the get-go, then there's no way that the employer can obtain the informed consent that 15B requires, because they can't properly inform the plaintiff of what their policy is for length of term of storing, using, and having it. But don't they go hand-in-hand? No, not in this instance. In this instance, well, I mean, they go hand-in-hand in the sense that this is how the legislature has structured the statute. And this is under 15B. If it's not in place when you collect it, you got a 15B violation, okay? If you don't have a policy in place, you get one in place, as in this case, and then the plaintiff's relationship with you ends. And at that moment, he has an interest, hey, I want to know how long you're going to keep it now that I'm leaving your company. The policy's in place. He hasn't suffered any harm or injury whatsoever. That's why I think Judge Hanzel zeroed in on a very narrow, you know, in every case, there's duty. I mean, there's a negligence standard, as Mr. Roberts just said. There's duty, breach, causation, and damages, okay? The duty in this case is created. The duty is to have a policy, okay? But you can't have an action if you don't have the other elements. And that duty is not breached. And there is no aggrievement or injury. No legal interest has been invaded or violated until you reach a moment in time where the plaintiff is leaving the defendant's employment, and now is when the interest arises. That's when the interest attaches. I need to know what you're doing with my data now that I'm leaving. I need to know what you're doing with my data now that the purpose that you had for collecting it has been satisfied. That's when the interest attaches, and that's when the aggrievement would occur. And that is what's missing in this case. That's why I say you don't have to make a sweeping decision in this case. You're going to be the first court in the nation from Illinois that's going to be shopped all over the country, this decision, as to when you have to have a policy in place. That's what they're going for in this case, and that's why I opened with that point. You don't have to make that decision in this case. This case can be decided on the very simple, narrow ground that Judge Hanzel relied on, that there was no harm. And no harm meaning no legal interest or right of the plaintiff was invaded at the time his employment ended, because at that moment in time, when he had an interest in a policy, it existed, and it was present. So his interest and right was not invaded. It was not violated, and it's a very simple case of the plaintiff failing to plead and prove the element of damages in this case. So the fact that the statute says you have to develop a schedule upon the possession of the biometric data, you're saying that is not applicable here because it's under A? Possession of the data is what creates the duty to do it. That's correct. Doesn't that also create the danger? And isn't that the reason that the statute was put in place to protect an individual's biometric data? I think that the protection of the individual's biometric data really comes from 15E. I mean, 15E is the one that says you have to store it in a commercially reasonable manner. Now, there's another example. So if I'm an employee and I discover that my employer is keeping the data on a server with a password that's called password, which is not a commercially reasonable password, then hopefully nobody's using that for their password around here. But if you're using it, then you would immediately have an invasion of the plaintiff's interest or right, legal interest or right, and it being securely saved, stored, and you'd have a 15E claim. And like I said, under 15B, the moment you collect it, if you don't have a policy that you can tell me how long you're going to keep it, you've got a 15B claim. He doesn't have one of those, and that's why he's conflating these two different sections. He wants to try and turn this 15A claim into his 15B claim by saying, hey, you didn't have my data when you possessed it. Well, the problem is we did have the policy in place at the moment in time when our relationship ended, which is all the statute requires. So there is a duty to create it. I think to Justice Jorgensen's point, the statute is worded sort of in the future tense, must develop. Going forward, you must develop. But how is it any benefit to anyone to take A and separate it from B and not read those in concert with each other? How does that benefit the legislation or the statute? I mean, isn't that the whole intent is to protect the individual by having a policy in place? And I think that that is exactly the intent and why it works, why it works hand in hand, because by using 15B, you are incenting the defendant to have a policy in place because you can't provide the informed consent at the moment you collect it unless you have the policy in place. So that was why 15B prompts or requires and encourages a defendant to get a policy in place before they collect it. Which goes to Justice Brennan's point. Before they collect it, not at the time that they're dismissing the employer, they're going to destroy it. You got to have the policy in place when you collect it. That protects the plaintiff's interest at the moment it's collected, that there is a policy governing storage and use. So that covers it when you've got a situation. That's what prevents the problem that Justice Brennan was identifying, which is the due process problem, that there would be instantaneous liability for any employer who was in possession of data on December 31st, 2007, and the statute went into effect January 1st, 2008. They are instantaneously liable because they had possession of the data. That's different. That's different. That is different. Right. And the way it would work from that point is that going forward from the statute's effective date, as you collect data, if you're going to continue to collect data, you better make sure you have a policy in place because you've got to get the informed consent. And you can't get the informed consent under 15B unless you already have the policy in place. So that's how you protect the plaintiff's interest in this case. 15A is simply what says it establishes what the policy has to provide. And the legal interest it creates only occurs and arises at the moment specified in 15A, when you no longer have a need for the use of the data. That's when the plaintiff's interest in making sure if there wasn't one in place before that would arise. Mr. Vinci, can I just ask you a question? So I just want to make sure you agree that though you don't agree as to when this agreement accrues, I don't like that sentence, but we'll stick with it. It is assuming the agreement has occurred, you agree it's a personal right, not a public right? Yes, I do. I mean, I think the publicly available part is just to make sure it's accessible to people. You know, like, for example, if an employee has been terminated, they need to be able to go back and look on the employer's website and see, you know, can I find out how long they're going to keep my data? When are they going to destroy it? I think that's really kind of, again, going back to your point, Justice Shostak, the protections that the statute provides. But, you know, I do think these all work hand in hand. And I do think that the determination of when, to your point again, Justice Brennan, about when an injury accrues, it's, as Rosenbach tells us, it's the moment the plaintiff's legal right or interest has been invaded. And our position is that that right or interest is not invaded under a pure 15A case, which is what we're dealing with here. Again, no decision grounds here, okay? This is purely a 15A case. That legal right or interest in having a policy in place for the plaintiff does not exist, does not arise until we reach a moment in time where the need for the data has ended or the relationship has ended. Isn't it basically saying, isn't the statute basically saying, and the case law basically saying, is possession of the data equals a policy? You have possession, you best have a policy. I agree that that's the duty that's created, but that's not a complete cause of action. There's a duty to develop a policy. Again, I go back to the point, as Mr. Roberts has said, and as we all agree, it's a negligence standard in this case. So there may be a duty to create it, but there's no cause of action until there's been a breach of the duty, causation, and damages. And under Rosenbach, the causation and damages aspect, invasion of the right to a policy, can't occur until we've reached the moment in time specified in 15A, which is the purpose of collecting it has ended or the relationship has ended. Now I'm aggrieved. Now I have a complete cause of action. So the fact that a policy didn't exist up until that point, it's not actionable. But, you know, like I said, if the plaintiff has a viable 15B claim because their data was collected before a policy was in place, and therefore the employer could not have told them or given them the information they needed to know what the terms were, the length of term. That's what 15B2 says, the length of term it was going to be held. Well, then you have a violation, but there's no 15B claim in this case. Mr. Vincent, this is not a rhetorical question. The policy that's required in 15A as it relates to the retention schedule and destruction policy. Is that coterminous or the same thing as what's required to inform an employee or who you're collecting the data from in B2? The specific purpose and length of term for which a biometric identifier is being collected, stored and used. Are those the exact same things or is one a subset of the other? I think that it may be a subset because when I think of retention and destruction, I think that is somewhat differently than storage. You know, storage means to me you're holding it. Retention suggests to me how much longer are you going to hold it, which is why it's a little, let's face it. This statute, unfortunately, is not the model of clarity. I mean, it's being litigated every which way you possibly can. And so I do think there for all intents and purposes, I think it is coterminous. I think to Justice Shostak's point, the protections intended for the plaintiff are achieved by treating the 15B informed consent as the incentive to make sure you have a policy in place. Because that's the only way you can get informed consent when you collect it. But I think if you're talking about a pure 15A claim, and that's what, you know, that's why I keep arguing. This is a very narrow decision to be made here. It is a pure 15A case. It is not a 15B case. There is a simple solution that Judge Hansel pointed to, which is that there was no harm and there was no agreement because the interest in having a policy when he left the company was satisfied. It was not invaded or violated. And that's the standard that Rosenbach sets. The Rosenbach says the violation in itself is sufficient to support the individual's or customer's statutory cause of action. That the obligation is triggered upon the collection of the data. Correct? That's 15B is collection. Okay. But 15A and B, you don't think they should be read together? Well, only in the sense that they operate at different moments in the process of collecting and possessing data. Because you're going to collect data before you possess data. All right. So 15B is going to be triggered before 15A in any circumstance. And that's where the protection comes in. And that's why they work hand in hand. Because if you don't have the policy in place and you collect the data, you haven't been able to tell the plaintiff the term, the length of term it's going to be collected. And now you've basically, just as Brennan pointed out, I think it is coterminous, you violated 15A and B. Because you took it without a policy and you don't have a policy in place. Okay. But again, in this case, we don't have a 15B claim here. They've abandoned that claim. And I will tell you, even though that claim. How did they abandon the claim? They didn't appeal it. Judge Hansel dismissed that count. That was count two. Very early on in the case. And they filed a notice of appeal that specified only 15A. And then they tried to add it late. This court denied that motion. And so the 15B claim is gone. That has become a final judgment. No longer subject to appeal. The court has no jurisdiction over it. Now, I will tell you, Mr. Roberts has already filed another 15B claim against J&M Plating. There's another 15B claim now pending. Identical plaintiff. Identical allegations. Same complaint in front of Judge Fabiano. All right? We think that that's raised judicata. I think that issue may ultimately reach you again someday. But that's. We're not there now. We're not there now. But, you know, he's still got his 15B claim pending again. I mean, that's been filed. Was it an extension limitations problem with 15B? Yes, it was. And that's, you know, that's the issue that's, of course, pending in front of the Supreme Court in the Tims case. Yep. Judge Hanzel found that the statute of limitations accrued upon the first collection of data. Not the last. Or not a continuing violation, which are the different theories that are out there. And hopefully the Supreme Court will reach the same conclusion in the Cothran case. That it accrues upon first collection. But, nonetheless, there's a 15B still pending in the trial court against J&M. You know, who knows? Maybe he'll succeed on that. Maybe he won't. Like I said, I think it's raised judicata since that claim was extinguished in this case already. But for purposes of this case, pure 15A claim, simple elements of the cause of action. He has not shown harm or injury because his right or interest was not invaded. At the moment he was terminated, there was a policy in place. We refer to the violation Judge Justice Shostak referenced in Rosenbach. The violation they're referring to is the invasion of the legal right or interest created by the particular section of the statute. And here that's 15A. And that interest is limited to the existence of the policy when your employment ends. And he had it. In fact, the policy was in place four years before his employment ended. I'm sorry. Two years before his employment ended. Thank you. We would ask that you affirm. All right. Mr. Roberts. Thank you, Your Honor. Just really quickly. The 15B claim has been sustained. Defendant's motion in that case for raised judicata was denied because of the Watson case, which came out five days before we had to appeal that decision. Your Honor, I noticed in Mr. Vincent's argument that he cited zero case law. He cited zero policy. And he played fast and loose with the text, which all supports the fact that Judge Hondel's decision was wrong. So let's first turn to Rosenbach. And I'm reading from 129NE3D1206. When a private entity fails to comply with one of Section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric data is subject to the breach. Now, that says that if there's a violation of any of 15A's requirements, you have a cause of action. The person's aggrieved. Judge Hondel's conclusion that you're not was simply wrong. Let's look at the text. There are two requirements for Section 15A. A private entity in possession of biometric data must develop a policy establishing the retention and guidelines for permanently destroying biometric identifiers and biometric information. And when it must be destroyed is when the initial purpose for collecting or obtaining such identifiers has been satisfied or in three years. And then, that's the first requirement. You have to establish this policy. The second requirement is a private entity in possession must comply with its established retention and deletion schedule. So there are two separate requirements. You have to create the schedule, and you have to comply with the schedule. J&M did not comply with the schedule when it possessed his information, and therefore, there is a violation of 15A, and Mr. Moore has been aggrieved per Rosenbach. So 15A, we didn't need 15B because 15A says the exact same thing? No, Your Honor. So I think this goes to your public versus private thing. J&M had to have established this privacy policy saying, hey, public, this is what we're going to do with your biometric data. Then they have to individually inform each person saying, do we have your consent before we collect it, which they also violated, specific purpose and length of time. And the retention and deletion schedule. And you can look on any entity that collects biometric information. They all say the same thing. We're going to store it for this long. This is how we're going to store it. We're going to delete it after three years. They have to establish that to the public, but the 15B is an individual. J&M violated both of those statutes, but more relevantly, they violated 15A because when they possess biometric data, for Mr. Moore and everybody else in September of 2014, they did not have this schedule in place. Let's also talk about this current versus future obligation that Mr. Vinson is harping on. That is completely rebutted by every case to examine the issue. Every single case, every single one has said this is a current obligation, not a future violation. Your rights are not infringed upon when you leave employment if your data is not deleted. That is just against the text. It's against the policy. It's against the case law. Your rights are infringed upon when your data is possessed. You simply do not have this schedule, and they did not have this schedule. Again, there are two separate prongs. J&M can say, yeah, we eventually created the schedule and we complied with it. Fine. You complied with the second element of 15A, but you failed to comply with the first prong. You had a duty to establish this policy to the public. You breached that by not doing it when you possessed it, and that caused people injury per Rosenbaum. And again, when was this duty? When did it arise? The second the statute became effective? The second that they possessed the biometric information, which was in September of 2014. And I really want to remove it from this hypothetical you're addressing, Justice Brennan. But I like my hypothetical, Mr. Roberts. Fair enough, Your Honor. So, yes, if they possessed it on whenever the statute was enacted in 2008, they would have a duty. But that's not what they did. They didn't possess it until 2014. So six years later, they had to establish this policy, and they didn't establish the policy. They had to establish it on September 2014, whatever that day was that they possessed the biometric data. That's six years after the schedule, and they didn't. And what Mr. Vinson is essentially asking you to do is say 15A doesn't matter. You don't have to establish this at any time. You can establish this. If this employee is employed for 20 years, that's fine. If this employee is employed for four years, and then we have a data breach, and now all of a sudden everyone knows that this policy has been created, or that everyone's biometric data has been compromised, and then we create this policy, that's fine. Mr. Roberts, is it your position that if a policy is in place, there can be no data breach? No, Your Honor. Then why would they be inextricably connected? Because the point of 15A, Your Honor, is to inform persons of this is how your biometric data is going to be handled. This is when it's going to be deleted. This is the retention and deletion schedule for your biometric data, and this enables you to make it. And when I possess data, I must develop that schedule, correct? Your Honor, I see my time is up. May I briefly answer your question? Yes, Your Honor. So when you first possess the data, that is when you have to create it. That's what the text says, plain and simple. That is what the case law has all held, and that is what the policy behind BIPA has said. If you don't have this policy when you first possess it, then you violate the statute, and Mr. Vinson's interpretation invites all sorts of harms to befall people who don't have the notice that Section 15A requires. Thank you. Any additional questions, Justice Georgeson? No additional questions. No more questions. Thank you, gentlemen. We'd like to thank both counsel for spirited arguments. We take the case under advisement and render a decision in due course. Thank you very much.